# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES EVERETT FLOOD, III** | * | |
| | * | |
| Petitioner | * | |
| | * | |
| v. | * | Civil No. **PJM 11-3563** |
| | * | *Related to Criminal No PJM 03-457* |
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| Respondent | * | |

## <u>MEMORANDUM OPINION</u>

James Everett Flood, III has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody, ECF No. 396, raising several claims of denial of effective assistance of counsel under the Sixth Amendment. Having previously denied one of Flood's claims for relief as well as the same claim raised by his co-defendant Kenneth Lighty—namely, that their counsel provided constitutionally ineffective assistance by failing to object to the Government's purported use of its peremptory juror strikes in a discriminatory manner, *see United States v. Lighty*, No. PJM 03-0457-1, 2016 WL 8669911, at *1 (D. Md. Aug. 12, 2016)—the Court now considers Flood's remaining claims of ineffective assistance. The Government's response is that, in every respect, Flood has failed to make out a claim under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Flood's Motion with respect to all remaining ineffective assistance of counsel claims is **DENIED.**[1]

---

[1] Both Flood and Lighty have also filed supplemental §2255 motions ("supplemental petition") challenging whether, in the wake of *Johnson v. United States*, 135 S. Ct. 2551 (2015), kidnapping is a "crime of violence" for the purposes of their firearms convictions. ECF No. 527,528, 530. The issue is now before the Fourth Circuit in the cases of *United States v. Walker*, No. 15-4301, and *United States v. Campbell*, No. 15-4281, which are in turn stayed pending the United States Supreme Court's decision in *Sessions v. Dimaya*, No. 15-1498. The Court has stayed the briefing schedule as to these motions pending a ruling by the Supreme Court and the Fourth Circuit. The

# I. FACTUAL AND PROCEDURAL BACKGROUND

A full account of this case is set forth in *United States v. Lighty,* 616 F.3d 321, 336 (4th Cir. 2010). The Court limits itself here to a brief summary of the facts necessary to consider the current petition.

On the evening of January 3, 2002, a group of men driving a dark Lincoln Continental kidnapped Eric Hayes—the son of a Washington, DC, police officer— in Southeast Washington, DC. *United States v. Lighty*, 616 F.3d 321,337, 340 n.15 (4th Cir. 2010). The men drove Hayes to Hillcrest Heights, Maryland, and shot him multiple times in the head, killing him instantly. *Id.* at 338.

A federal grand jury charged Lighty, Lorenzo Wilson, and Flood—the petitioner in this case—with kidnapping resulting in the death of Hayes, and aiding and abetting the same, 18 U.S.C. §§ 1201(a); conspiracy to kidnap, and aiding and abetting the same, 18 U.S.C. §§ 1201(c); and three counts of using a firearm in furtherance of a crime of violence, and aiding and abetting the same, 18 U.S.C. §§ 924(c). *Id.* at 336. The charge of kidnapping resulting in death made Flood eligible to receive the death penalty.

The Court initially appointed Harry Trainor, Esquire, and John McKenna, Esquire, as Flood's trial attorneys but when the Government decided to seek the death penalty with respect to Lighty but not Flood, Trainor withdrew his representation and the Court appointed Michael Lawlor in his stead. ECF No. 396-1 at 1.

Neither McKenna nor Lawlor sought to pursue plea discussions with the Government before trial. ECF No. 406. According to an affidavit Lawlor has submitted, at Flood's trial, the Government first approached him during jury selection to determine whether he (Lawlor) wanted

---

Government has yet to respond to Flood and Lighty's petitions. These supplemental petitions are not considered in the present Memorandum Opinion.

to engage in plea discussions and Lawlor and McKenna then met with the Government that same night. *Id.* Assistant United States Attorney Sandra Wilkinson, one of the prosecutors in the case, has indicated that she does not have a "specific recollection" of any such discussions in this case, but will assume for purposes of this Motion that Lawlor's assertion is correct. ECF No. 409 at 10 n.3.

According to Lawlor, during the course of this eleventh-hour discussion, the Government allegedly notified him and McKenna that Flood "would have to proffer" in order to receive a plea offer. ECF No. 406 at 2. Lawlor says that he and McKenna discussed the idea between themselves and decided that proffering "was too risky" at that point in the case, but they not did raise the prospect of proffering with Flood nor did they allow him the opportunity to determine whether he wanted them to engage in plea discussions. *Id.* Lawlor indicates, however, that at some point during their representation of Flood, he and McKenna "did discuss the notion of pleading guilty with him and he was not reluctant to do so. He had some concerns about the amount of time he might have to serve, naturally, but did not indicate he would not plead guilty." *Id.* Beyond the brief discussion with the Government at the opening of trial and a brief follow-up that same evening, no other plea discussions took place.

Flood and Lighty were tried together in an eleven day jury trial beginning on September 6, 2005.[2]

During the trial, Flood's girlfriend —Tynika Marshall — testified that less than an hour before Hayes was found dead, she observed Flood "pull his Lincoln Continental up behind her car at an intersection approximately one block from" the street where Hayes was killed. Lighty, 616 F.3d at 340. Marshall also called Flood on his cell phone approximately fifteen minutes before Hayes was murdered, and again one hour later. *Id.* At that point, Flood and Marshall

---

[2] Wilson's case was severed and he was tried separately. ECF No. 396-1 at 9.

arranged to meet near the street where Hayes was killed. Once in the car, Flood instructed Marshall to drive by what was the scene of Hayes' murder, where they saw police officers gathered. *Id.* at 340-41. One month after the murder, Marshall and Flood drove Flood's car to North Carolina and left it with his parents. *Id.* at 341. Law enforcement located the car at the home of an individual who had purchased it from Flood's parents. *Id*. at 341 n.21. DNA testing revealed spots of Hayes' blood and fibers matching those found on his clothing in the car. *Id.* at 379.

In addition, Wilson's girlfriend—Krystal Phauls—testified that around the time the police found Hayes' body, Wilson called Phauls from Flood's cell phone at least seven times, instructing her to meet him at an address approximately two miles from where Hayes was killed. *Id.* at 339. When Phauls arrived, she saw Lighty, Flood, and Wilson walking away from the home where Flood and Marshall later retrieved Flood's car. *Id.*. Lighty had blood on his shirt and the men mentioned having done "something bad" to someone. *Id.*

Latasha Massey —the girlfriend of Tony Mathis, an associate of Lighty, Wilson, and Flood— also testified at Lighty and Flood's trial.[3] *Id.* at 344. Massey testified that Flood called Mathis the day of Hayes' murder, and, "[a]ccording to Massey, after the call, Mathis . . . [entered Flood's car and] when Mathis returned home, he had blood on the bottom of his pants and boots." *Id.* Massey recalled that Flood called Mathis around breakfast time whereas Hayes' murder occurred around 8:00 PM. Trial Tr. 10/19/05 at 45-46. On cross-examination by Government counsel, Massey admitted that her impressions of Mathis and Flood that morning may not have been in connection with Hayes' murder, arguably implying that her impressions may have been linked with some other crime. Trial Tr. 10/19/05 at 49.

---

[3] Massey was called by Lighty as part of his defense strategy apparently to imply that Flood and Mathis actually killed Hayes, not Lighty.

The jury found Lighty and Flood guilty on all counts and sentenced Lighty to death. *Lighty*, 616 F.3d at 336. Flood was sentenced to life in prison on the kidnapping resulting in death count and sixty-five years of consecutive time on the remaining counts. *Id.*[4]

In a consolidated decision following Lighty's and Flood's appeals, the Fourth Circuit affirmed the convictions and sentences of both. *Id.* at 337. The Supreme Court denied writs of certiorari with respect to both. *See Lighty v. United States*, 565 U.S. 962 (2011); *Flood v. United States*, 562 U.S. 1118 (2010).[5]

Lighty and Flood subsequently filed motions to vacate their sentences. Flood's Motion to Vacate under 28 U.S.C. § 2255 ("§ 2255 Petition"), ECF No. 396, is presently before the Court.[6] He cites eight ways in which either or both of his trial counsel rendered constitutionally ineffective assistance. They did so, he says:

(1) By Failing to Resolve this Case with Plea Agreement;

(2) When They Failed to Move for Joinder of His Trial with that of Lorenzo Wilson;

(3) When They Failed to Move to Dismiss the Indictment as Multiplicitous;

(4) When They Failed to Object to the Government's Use of its Peremptory Strikes to Remove Women From the Jury in Violation of the Equal Protection Clause of the Fifth Amendment;

(5) When they Promised to Offer Evidence of Flood's Innocence and Good Character, then Failed to Provide It;

(6) When They Conceded Certain Evidence that Flood Claims was Sufficient to Support a Finding of Guilt;

---

[4] In his separate trial, Wilson was only found guilty of the conspiracy to kidnap count and was found not guilty on the remaining counts. *Id*. at 336. He was also sentenced to life in prison. *Id.*

[5] Lawlor, who had represented Flood at trial, also represented him during his direct appeals.

[6] Marta Kahn, Esquire, was appointed to represent Flood in post-conviction proceedings. ECF No. 395.

(7) When They Failed to Request a Limiting Instruction Following the Government's Cross-Examination of Latasha Massey;

(8) When, Taken Together, Counsel's Deficient Acts and Omissions Undermined Any Confidence in the Verdict and Sentence in this Case.

Flood has asked the Court the hold an evidentiary hearing as an initial step in vacating his conviction and sentence. ECF No. 396-1 at 27.

The Court has already held oral argument as to one of Flood's claims, viz. the claim that counsel failed to object to the Government's use of peremptory strikes to strike women from the jury in violation of the Equal Protection Clause and Fifth Amendment. The Court denied both Flood's and Lighty's §2255 motions with respect to that claim. *United States v. Lighty*, No. CR PJM 03-0457-1, 2016 WL 8669911, at *1 (D. Md. Aug. 12, 2016).

The Court also held oral argument on the remaining claims in Flood's § 2255 Petition, which the Court addresses at this time. ECF Nos. 560, 572. At the close of the hearing, the Court directed the Government to provide additional briefing as to Claim One, i.e. to specifically set forth how often and under what circumstances defense counsel in other cases have chosen not to seek a plea agreement from the Government. The Government filed its supplemental papers on August 22, 2017, and Flood responded on September 11, 2017.

No evidentiary hearing has been held on any of the claims and, as elaborated *infra*, the Court finds none is necessary. *See* 28 U.S.C. § 2255 (b); Section IV, *infra*.

## II. STANDARD OF LAW

Ineffective assistance of counsel claims are governed by the two-part test first set forth by the Supreme Court in *Strickland v. Washington*, which provides that:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the

defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984).

These two elements are typically referred to as the "performance" and "prejudice" prongs. *See Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). Since a petitioner bears the burden of proving both *Strickland* elements, he fails to satisfy his overall burden if he fails to prove either. *Id.* Accordingly, the Court may properly begin its analysis with either the performance or the prejudice prong.

To show deficient performance, the defendant must prove that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. The objective standard of reasonableness is evaluated under "prevailing professional norms." *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (quoting *Strickland*, 466 U.S. at 688). Reasonableness must be evaluated "within the context of the circumstances at the time of the alleged errors." *Sexton*, 163 F.3d at 882 (citing *Strickland*, 466 U.S. at 690). Strategic decisions and tactical judgments are "virtually unchallengeable." *Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). In assessing the first prong, the reviewing court operates with a presumption that counsel's performance was not deficient but instead falls within the broad scope of reasonable assistance. *See id*. (citing *Strickland*, 466 U.S. at 688).

In order to satisfy the prejudice prong, the defendant must show that there was a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. A "reasonable probability" is a

probability sufficient to undermine confidence in the outcome. *Id*. When challenging a conviction, the defendant must show that there is "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994) (quoting *Strickland*, 466 U.S. at 695). However, a defendant need not go so far as to establish that "counsel's deficient conduct more likely than not altered the outcome of the case." *United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015) (quoting *Strickland*, 466 U.S. at 693).

### III.    FLOOD'S PETITION

All seven of the remaining claims in Flood's Petition claim that McKenna and Lawlor provided constitutionally ineffective assistance before and during trial. The Court finds all but Claim One easily disposed of and will consider each of those claims in turn, before turning to the issue of whether counsel was ineffective in failing to seek a plea deal.

#### a.    *Claim 2: Counsel Rendered Constitutionally Ineffective Assistance When They Failed to Move for Joinder with Lorenzo Wilson.*

Flood claims counsel rendered ineffective assistance by failing to move for joinder of his case with that of Lorenzo Wilson. Though counsel did move for severance from Lighty, which the Court denied, Flood argues that the Court would have granted the motion if it had been made in conjunction with a motion to join with Wilson because the Court would then have had two, rather than three, trials. ECF No. 396-1 at 9-10. Flood asserts that counsel erred in not making such a request. *Id.*

The Government responds that joining Flood's trial with Wilson's would not have been feasible. The Government states that it moved to severe Wilson's case initially because it sought to introduce testimony recounting a confession Wilson made to his girlfriend that, under *Bruton v. United States.* 391 U.S. 123 (1968), would have been inadmissible against Flood and Lighty.

The Government further responds that "it is government counsel who determines whether or not to seek a joint trial when it intends to introduce a statement against one defendant that may implicate another defendant under *Bruton*." ECF No. 409 at 16. In other words, Flood's counsel would not have been able to file such a motion. Finally, the Government asserts that Flood cannot establish that he was prejudiced by the joint trial with Lighty. *Id.*

The Court agrees with the Government. Defense counsel could in no way have forced the Government to conduct a joint trial with Flood and Wilson because that would have prevented it from presenting certain other key evidence that was admissible against Wilson. Since such a request by Flood's counsel would have been futile, and counsel has no duty to raise claims that lack a legal basis, *see, e.g., Greer v. Mitchell,* 264 F.3d 663, 676, (6th Cir. 2008), counsel's performance was not deficient. Claim Two is **DENIED**.

### b. *Claim 3: Counsel Rendered Constitutionally Ineffective Assistance When They Failed to Move to Dismiss the Indictment as Multiplicitous.*

Flood next asserts that counsel rendered ineffective assistance by failing to move to dismiss the Indictment against him as multiplicitous, which is to say duplicative of one or more counts, because it included three counts of violating 18 U.S.C. § 924(c). Section 924(c) provides that a person who "during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall receive a certain mandatory minimum sentence, depending on how the firearm is used. Flood argues that he should have been charged with only one count because his use of a firearm was in support of one continuous crime, i.e. kidnapping resulting in murder.

This claim has no traction. The Fourth Circuit ruled definitively on this exact issue during Flood's and Lighty's direct appeals, denying both of their claims and finding that there

were "three separate uses of a firearm" in both Lighty and Flood's cases. *Lighty*, 616 F.3d at 370- 71. Counsel of course cannot be deemed ineffective for not raising an argument that would fail as a matter of law. Claim Three of the Petition is rejected.

   c. ***Claim 5: Counsel Rendered Constitutionally Ineffective Assistance When They Promised Evidence of Flood's Innocence and Good Character but Failed to Provide It.***

   Flood next claims Attorney McKenna was ineffective in promising evidence of Flood's innocence and good character in his opening statement, but failing to provide such evidence during trial. Flood asserts that this failure left the jury with the impression that Flood had no alternative explanation as to his whereabouts during the crime and that there were no witnesses who could testify to his good character under oath. Indeed, Flood points to the Court's own admonition to McKenna at the bench, warning him not to cross the line between promising to show that the Government had not met its burden of proof and promising to show that Flood did not commit the crime. Hearing Tr. 7/27/17 at 7:2-12.

   The Government responds that the "failure to keep a promise made in opening arguments does not constitute ineffective assistance" and can very well amount to reasonable trial strategy. ECF No. 409 at 21-22. Further, says the Government, the Court's statement to counsel was merely a warning going forward, not a finding of ineffective assistance already committed. Had the Court believed McKenna's representation was constitutionally ineffective to Flood's incurable prejudice, it certainly would have acted on the spot and more definitively. *See* Hearing Tr. 7/27/17 at 20:17-21:12. The Court agrees.

   Though the Court concedes that making promises to a jury that are not fulfilled during trial is risky business, as it noted at trial, there is no basis to that counsel's performance then and there fell below the threshold of effectiveness mandated by the Sixth Amendment. In fact, the Court believes that by cautioning McKenna at the outset from making unfulfillable promises, it

prevented him from possibly crossing the line into the realm of ineffective assistance. *See* Hearing Tr. 7/27/17 at11:17-25.

In any event, Flood has not established that McKenna's performance during his opening statement prejudiced the outcome of the case, i.e., he has not demonstrated a "reasonable probability" that the outcome of the case would have been different but for this supposed error. *Strickland*, 466 U.S. at 694. As the Fourth Circuit has recognized, "the evidence overwhelmingly supports the conclusion that Flood had actual knowledge of, and participated in, the kidnapping that resulted in Hayes' murder." *Lighty*, 616 F.3d at 379. It seems highly unlikely—certainly far from the requisite "reasonable probability"—that the jury would have reached a different verdict had counsel called character witnesses on Flood's behalf or—against all probability—found a witness to establish an alibi for Flood, a person, by the way, not specifically identified by Flood. In short, what clearly appears to have happened was that trial counsel pulled back from a promise he realized he could not fulfill. *See* ECF No. 406 at 5. This claim also fails.

### d. Claim 6: Counsel Rendered Constitutionally Ineffective Assistance of Counsel When They Conceded Evidence Sufficient to Support a Finding of Guilt Against Flood.

Flood asserts that counsel rendered ineffective assistance when they conceded that both his car and his cell phone were used during the crime, which, he claims, amounted to a concession that provided sufficient evidence to support his guilt. In particular, Flood asserts that, because only a "slight connection between the defendant and the conspiracy [is required] to support conviction," *United States v. Brooks*, 957 F.2d 1138, 1147 (4th Cir. 1992), the car and cell phone alone were enough to establish his guilt before the jury. ECF No. 396-1 at 23. In other words, according to Flood, by agreeing that these items were used in the crime, his counsel provided the jury with enough circumstantial evidence to convict him of the crimes.

The Court finds it highly unlikely the mere use of Flood's car and his cell phone sufficed to convict Flood of any of the crimes with which he was charged, but again, in any event, Flood was not prejudiced by the arguable concession of these indisputable facts by counsel. There was overwhelming evidence that Flood owned the cell phone and the car that the conspirators used and the jury certainly would have found those facts irrespective of the concession. Recall the testimony of Flood's girlfriend—Tynika Marshall—she "observed Flood pull his Lincoln Continental up behind her car . . . one block from Keating Street [and,] [a]fter seeing Flood, Marshall called him on his cell phone" approximately fifteen minutes before Hayes was killed. *Lighty*, 616 F.3d at 340. Furthermore, "[a]ccording to Marshall, sometime in February 2002, Flood asked her to help him take his Lincoln Continental to North Carolina," and this car was later discovered containing drops of Hayes' blood. *Id.* at 341 & n.21. Marshall's trial testimony alone clearly indicated that Flood's car and cell phone were used during the crime. The jury almost certainly would have decided these facts regardless of whether counsel conceded this point.

Nor was there prejudice with respect to the kidnapping resulting in death charge. As the Fourth Circuit found, the evidence overwhelmingly supported the conclusion that Flood participated in the kidnapping of Hayes. *Id.* at 379. In support of that contention, the Fourth Circuit stated not only that the use of Flood's car during the crime supported a guilty verdict; it also pointed to a litany of other facts sufficient to support conviction independently. *Id.* In addition to Marshall's testimony just mentioned, the appellate court noted that Flood had arrived with Lighty and Wilson at the location where Wilson instructed Phauls to pick him up minutes after the murder, at a point which was just outside the house which Marshall testified was where she retrieved Flood's car; that Lighty had blood on his shirt when Phauls picked the Defendants

up; and that in the car the Defendants spoke of having done something bad to somebody. *Id.* In other words, despite counsel conceding what was obvious from testimony—that the car and cell phone used during the crime belonged to Flood—there was strong evidence of Flood's participation in the actual kidnapping based on separate and distinct evidence.

Flood cannot show a reasonable probability that the outcome would have been different even if his counsel had not "conceded" that his cell phone and car were used during the crime. Claim Five is **DENIED.**

### e. *Claim 7: Counsel Rendered Constitutionally Ineffective Assistance When They Failed to Request a Limiting Instruction Following the Government's Cross-Examination of Latasha Massey.*

Flood claims counsel rendered ineffective assistance by failing to request a limiting instruction following the Government's cross-examination of Latasha Massey. Massey was called by Lighty as part of his defense counsel's strategy to imply that Flood and a third man named Tony Mathis, who was then involved with Massey, actually killed Hayes. Massey testified that Flood called Mathis the morning of Hayes' death, and shortly thereafter Flood and Mathis went somewhere. *Lighty*, 616 F.3d at 344. When they returned, Flood had blood on his shirt. *Id.* On cross-examination, Massey testified that her recollection was that the events she described occurred early in the day, whereas in fact Hayes was killed in the evening, a discrepancy clearly favorable to Flood. At the same time, Massey agreed with the Government that "in fact, in January or February of 2002, there were several murders that happened in that neighborhood" and that she "[didn't] know which particular murder [she] heard about that [she] associated this incident with." Trial Tr. 10/19/05 at 49. That uncertainty would similarly work to Flood's benefit. She was not certain if she could link Flood to Hayes' murder.

But Flood claims that Massey's testimony created the impression that Flood may have committed a different violent crime the day Hayes was killed and had the effect of tainting the jury's impression of Flood. ECF No. 396-1 at 25-26. During oral argument on the present Petition, Flood's most recent attorney, Kahn, elaborated on exactly what sort of instruction she would have requested had she been counsel at the trial: "[Y]ou've heard the implication from this testimony that Mr. Flood was somehow involved in another murder. You are in no way to consider her testimony as evidence that he was involved in another murder or consider the possibility that he was involved in another murder in deliberations in this case." Hearing Tr. 7/27/17 at 32:3-10. Well and good.

However, a juror parsing Massey's testimony would have had to make several logical leaps to extrapolate that Flood and a co-conspirator were involved in another crime. Any implication of such involvement was subtle, if present at all. In that circumstance, reasonable defense counsel could very well have decided not to seek a jury instruction, on the theory that telling the jury not to "consider [Massey's] testimony as evidence that he was involved in another murder" would have at run the considerable risk of underscoring for the jury that Flood was indeed involved in possible additional murderous activity. Counsel's performance would thus have been a sound "strategic decision." But in no way was it constitutionally deficient. *See Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009). Claim Seven is **DENIED.**

**f. Claim 8: Counsel's Deficient Acts and Omissions When Considered Together Undermine Any Confidence in the Verdict and Sentence in this Case.**

Flood contends that the Court, when determining prejudice, must look at the cumulative effect of the errors. ECF No. 396-1 at 26 (citing *Strickland*, 466 U.S. at 695). According to the Flood, the totality of his counsel's errors prejudiced his case, resulting in his life sentence. *Id.* at 27.

In the first place, the Court has just found either no errors or no prejudicial errors by counsel. Apart from that, the "totality of errors" argument is not recognized in this Circuit. *See Fisher v. Angelone*, 163 F.3d 835, 852-53 (4th Cir. 1998). Claim Eight is **DENIED.**

**g.** ***Claim 1: Counsel Rendered Constitutionally Ineffective Assistance by Failing to Resolve this Case with Plea Agreement****.*

The Court now turns to the issue of whether Flood's counsel was ineffective by failing to seek a plea agreement in this case, a somewhat more textured claim.

1) Performance Prong.

It is well settled that attorneys representing criminal defendants have certain obligations during plea negotiations. As the Supreme Court noted in *Missouri v. Frye*, "plea bargains have become so central to the administration of justice that defense counsel have responsibilities in the plea bargain process." 566 U.S. 134, 143 (2012). Specifically, *Frye* held that "counsel has the duty to communicate formal offers from the prosecution to accept a plea," but also noted that the case "present[ed] neither the necessity nor the occasion to define the duties of defense counsel" in the plea bargaining process beyond the duty to communicate formal plea offers.[7] *Id*. at 145. Thus, the issue of whether an attorney has a "duty to explore the possibility of a guilty plea" before trial, ECF No. 396-1 at 3, as far as the Court can discern, is an issue of first impression in this Circuit, since neither the Supreme Court nor the Fourth Circuit has addressed this issue directly.

Flood asserts that counsel has a "duty to explore the possibility of a guilty plea in order to obtain a more favorable sentencing outcome." *Id.* In support, he relies on *Padilla v. Kentucky*, which held that, "[b]efore deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" 559 U.S. 356, 364 (2010) (quoting *McMann v.*

---

[7] It is undisputed in this case that no formal offer was made to Flood. The only issue in this case is whether counsel had a constitutional duty to seek a plea deal.

*Richardson*, 397 U.S. 759, 771 (1970)). Flood further notes that, under *Wiggins v. Smith*, "professional guidelines enunciating standards for criminal defense practice are useful tools in determining the prevailing standard of care for counsel," ECF No. 396-1 at 5 (citing 539 U.S. 510, 524 (2003)), and that, "[a]ccording to commentary to the American Bar Association's Standards for Criminal Justice, '[p]lea discussions should be considered the norm and failure to seek such discussion an exception unless defense counsel concludes that sound reasons exist for not doing so.'" *Id.*

The Government disputes the existence of such a duty. It cites *McRae v. United States*, a case from the Eastern District of Tennessee, which denied an ineffective assistance claim where counsel had failed to secure a "plea for a lesser offense" because the defendant did not "instruct[] his counsel to explore" such a plea and, significantly, where there was no "evidence the government would have offered such a plea." ECF No. 409 at 13 (citing 2008 WL 2713705 at *6-7 (E.D. Tenn. July 10, 2008)). The Government also notes that, under Sixth Circuit precedent, "'[t]he alleged denial of an opportunity to plea bargain does not permit collateral relief under § 2255.'" ECF No. 409 at 13 (citing *Anderson v. United States*, 2000 WL 1256902 at *2 (6th Cir. July 11, 2000)).

During the second oral argument on this Petition, the Court expressed concern with announcing a *per se* rule to the effect that defense counsel has a duty to seek a plea agreement in every criminal case, especially given the Government's assertion that "[m]any attorneys choose not to ask the government for a plea offer." Hearing Tr. 7/27/17 at 60:6-7. Accordingly, the Court requested supplemental briefing from the Assistant United States Attorney in which she might cite examples of situations where "counsel have not sought plea discussions." *Id.*at 68:5-13.

AUSA Wilkinson subsequently submitted an affidavit on behalf of the Government attesting that, based on her experience, there were many instances where "defense counsel did not seek a plea offer or where the Government did not make one." ECF No. 565 at 2. She cited several examples, including cases involving white collar defendants or public figures, cases in which counsel is "representing violent criminals whose exposure is a life-equivalent sentence" no matter the outcome of plea discussions, and cases where the defendant has made it "clear of his intention to go to trial either maintaining innocence or to put the government to its burden of proof." *Id.* at 2. Wilkinson further affirms that on the facts of this particular case, the Government would not have made an offer to Flood unless he agreed to cooperate, but counsel "were of the opinion that any plea offer that would have been acceptable to [them] would not have been acceptable to the defendant." *Id.* at 3.

Responding to the Government's submission, Flood has clarified that he is not requesting a ruling that failure to pursue plea negotiations constitutes *per se* ineffective assistance of counsel, only that counsel's failure to do so in the circumstances of this case was constitutionally deficient. ECF No. 568 at 1.

Before all else, what is clear is that the Government has no obligation or duty to offer a criminal defendant a plea deal. *See Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) ("[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial."). Indeed, in some states plea bargaining is curtailed or forbidden altogether. *See* Wayne R. LaFave et al., *Criminal Procedure* § 21.1(g) (4th ed. 2015). In fact, plea bargaining has historically been disfavored in many civil law countries, where there ordinarily is a requirement of compulsory prosecution. *See* Peter J. Messitte, *Plea Bargaining in Various Criminal Justice Systems* (May 2010),

https://www.law.ufl.edu/_pdf/academics/centers/cgr/11th_conference/Peter_Messitte_Plea_Barg aining.pdf (citing Máximo Langer, *From Legal Transplants to Legal Translations: The Globalization of Plea Bargaining and the Americanization Thesis in Criminal Procedure*, 45 Harv. Int'l L.J. 1, 11, 36-37 (2004)).

Against that historical backdrop, the Court takes no position on whether defense counsel's failure to seek a plea agreement in a criminal case is *per se* ineffective assistance. It considers only the facts of the case at hand—where a defendant is facing a life sentence and the evidence of his guilt is overwhelming. In that narrow category of cases, it is a fair argument that counsel, at the very least, should explore the possibility of obtaining a plea agreement with the Government.

Indeed, the Fourth Circuit has suggested as much. In *United States v. Pender*, 514 F. App'x 359 (2013), the defendant averred that his attorney failed to seek a plea bargain even though the evidence against him was quite strong and he faced a mandatory life sentence if convicted. While acknowledging that counsel "does not have a general duty to initiate plea negotiations," the Fourth Circuit emphasized that "counsel is still required to be a 'reasonably effective advocate' regarding the decision to seek a plea bargain." *Id*. at 361. Thus, if "there was no reasoned strategy to [an] attorney's decision not to pursue a plea bargain, . . . that would satisf[y] the first *Strickland* prong." *Id.* Similarly, in *United States v. Brannon*, 48 F. App'x 51 (2002), the Fourth Circuit stated that "in a case as here where the evidence was strongly against [the defendant], failure to pursue plea negotiations or failure to communicate a plea offer would be unreasonable assistance." *Id.* at 53.

Given the factual similarities to *Pender* and *Brannon*, Flood's counsel's failure to seek a plea deal arguably fell below the constitutional minimum. However, the Court need not

definitively decide that issue because, even assuming counsel's performance was deficient, the outcome for Flood remains unchanged since he cannot show prejudice resulting from this decision.

2) Prejudice Prong.

"To show prejudice . . . in a case involving a plea offer, petitioners must demonstrate a reasonable probability that (1) 'they would have accepted the earlier plea offer had they been afforded effective assistance of counsel,' and (2) 'the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.'" *Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013) (quoting *Frye*, 566 U.S. at 147). At a minimum, in order for a defendant to demonstrate that he would have accepted a plea offer, his "testimony that he would have done so must be credible." *Id.* at 367-68.

Furthermore, where "the prejudice suffered [was] . . . not that Petitioner was prevented from entering a specific plea agreement, but that he was denied the opportunity to 'negotiate plea conditions with the government,' . . . Petitioner must show . . . an additional reasonable probability that 'the government would have in fact made him a particular plea offer' in the first place." *United States v. Young*, 2017 WL 1363886 (4th Cir. 2017), *aff'g Young v. United States,* No. 09-223, 2016 WL 5496517, at *9 (W.D. Va. Sept. 29, 2016) (quoting *Shnewer v. United States*, No. 13-3769, 2016 WL 867461, at *21 (D.N.J. Mar. 7, 2016)). Adamant assertion of innocence and failure to express a willingness to cooperate make it harder for a petitioner to establish a reasonable probability that the Government would have made a plea offer. *See, e.g., Young*, 2016 WL 5496517 at *9; *Ramirez v. United States*, 751 F.3d 604, 608 (8th Cir. 2014).

Flood's problem is that he cannot show that the Government would have made a specific offer that he would have accepted. Indeed, the Government asserts that it would not have

considered a plea deal without a proffer by and a cooperation agreement from Flood. ECF No. 565 at 3. And there is no evidence, even in his present affidavit, that Flood ever gave an indication to anyone that he was willing to cooperate, which is to say, testify against his Co-Defendant.[8]

The only evidence Flood provides suggesting he would have accepted an offer is his after-the-fact his self-serving affidavit, which courts have held is not in and of itself sufficient to prove *Strickland* prejudice. *See, e.g., Merzbacher*, 706 F.3d at 367 ("Merzbacher's self serving assertion that he would have accepted the plea is, as both the state and federal courts recognized, 'the type of testimony . . . subject to heavy skepticism.'") (quoting *United States v. Day*, 969 F.2d 39, 46 n.9 (3d Cir.1992)); *Melo v. United States*, 825 F. Supp. 2d 457, 463 (S.D.N.Y. 2011) ("Melo must show some 'objective evidence other than [his] self-serving assertions to establish that [he] would have pled guilty had he received constitutionally effective assistance of counsel.'") (quoting *Crisci v. United States*, 108 F. App'x 25, 27-28 (2d Cir. 2004)). In fact, Flood does not suggest what sort of plea agreement he would have accepted. He merely states that he wanted to avoid a life sentence and "was hoping [he] could get a plea and get a lower sentence." ECF No. 397-4. This further demonstrates the hollowness of his claim. *See, e.g., Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (noting that the petitioner did not state in his habeas petition that he would have accepted the plea agreement); *Rosin v. United States*, 786 F.3d 873, 878 (11th Cir. 2015) (stating that the petitioner "alleged that, but for his trial counsels' error, he would have insisted that his trial counsel 'seek' a plea bargain on his behalf. [Petitioner] did not allege, however, that he would have accepted a plea of guilt and would not have insisted on going to trial.").

---

[8] Indeed, to this day it appears that Flood has not stated his willingness to have testified against Lighty in order to secure a lesser sentence.

In sum, despite any arguably deficient performance by Flood's trial counsel in failing to seek a plea agreement, Claim One is **DENIED.**

## IV.     EVIDENTIARY HEARING

An evidentiary hearing is required to "determine the issues and make findings of fact and conclusions of law" "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (b). For example, "[a]n evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record or when a credibility determination is necessary in order to resolve the issue." *United States v. Blondeau*, 480 F. App'x 241, 242 (4th Cir. 2012). Notwithstanding this, "[i]t is settled that "evidentiary hearings on [§ ]2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moncrieffe v. United States*, No. 1:07CR177, 2012 WL 488259, at *4 (E.D. Va. Feb. 13, 2012) (internal citations omitted).

As the above discussion on the merits indicates, the Court is satisfied that the files and records of the case "conclusively show that the prisoner is entitled to no relief" and that, as a result, an evidentiary hearing is not warranted. The facts are not in dispute with regard to trial counsel's performance. Nor is it disputed that no formal offer of a plea was made nor were any details of an offer, including of course the critical component of how much time would have to be served, discussed. Though Flood suggests that an evidentiary hearing is necessary to determine what the Government would have offered if his counsel had pursued plea negotiations and to further determine whether he would have accepted it, ECF No. 417 at 2-3, a hearing would add nothing to the factual predicate already in the record. The Court is especially reticent over "bringing in this defendant years after the fact to say whatever he may say now," particularly given the "menu of things he can say" to serve his own interests. Hearing Tr. 7/27/17 at 66:9-15. It would be far too

speculative today—twelve years after the fact—to attempt to determine what a hypothetical offer might have been and whether Flood would have accepted this hypothetical offer, including cooperating with the Government. No evidentiary hearing will be held.

## V.    CONCLUSION

For the foregoing reasons, Flood's Motion to Vacate under 28 U.S. C. § 2255 (ECF No. 396) Claims 1-8 are **DENIED.** The Court will take up Flood's supplemental § 2255 *Johnson* claim in a subsequent Opinion, pending further briefing.

A separate Order will **ISSUE**.


_____/s/_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**January 23, 2018**